IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN BRACKIN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA DEPARTMENT OF STATE HOSPITALS; NAPA STATE HOSPITAL; DOLLY MATTEUCCI; CINDY BLACK; KATIE COOPER; HAROLD COLLINS; FIONA MONTA; ELPIDLO CAPICOY; and DOES 1-20, inclusive,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　／ | No. C 15-03351 WHA<br><br>**ORDER: (1) GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS, (2) GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO AMEND, AND (3) DENYING REQUEST FOR JUDICIAL NOTICE** |

**INTRODUCTION**

In this civil-rights action asserting claims under Section 1983 and state law, defendants move for judgment on the pleadings and plaintiff moves for leave to amend his complaint. For the reasons explained below, the motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**, and the motion for leave to amend is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Plaintiff Shawn Brackin, who is represented by counsel, is an involuntarily committed patient at Napa State Hospital (NSH) (Compl. ¶ 1). In June, Brackin was attacked by a fellow inpatient, Brett Allan McGraw, in the hallway while both patients were allegedly unsupervised

(*id.* at ¶¶ 19–20). No hospital employees witnessed the assault (*id.* at ¶ 20). Brackin claims he suffered permanent brain damage as a result of the assault (*id.* at ¶ 25). In July 2015, he filed this action alleging a claim for Section 1983 against several NSH employees in their individual capacities, including: Dolly Matteucci, NSH director; Cindy Black, clinical administrator; Katie Cooper, program director; Harold Collins, on-duty unit director; and Fiona Monta and Elpidlo Capicoy, on-duty nurses. Brackin alleges claims for negligence against the individual defendants, NSH, and the California Department of State Hospitals (DSH). Brackin also alleges claims for failure to discharge a mandatory duty, failure to provide adequate equipment or personnel, and respondeat superior against DSH and NSH.[*]

Defendants now move for judgment on the pleadings pursuant to Rule 12(c). Brackin seeks leave to amend his complaint. This order follows full briefing and oral argument, as well as supplemental briefing, filed after the hearing, on Judge Thelton Henderson's ruling in *Snow v. California Department of State Hospitals*, No. 16-CV-01041-THE, 2016 WL 3055911 (N.D. Cal. May 31, 2016).

**ANALYSIS**

Our individual defendants claim that qualified immunity bars the Section 1983 claim and that Section 43.92 of the California Civil Code bars the negligence claim. DSH contends that Section 854.8(a) of the California Government Code immunizes it from Brackin's state law claims. DSH further maintains that derivative immunity bars the respondeat superior claim. All defendants seek judgment on the pleadings or an order dismissing Brackin's complaint. For his part, Brackin requests any judgment be issued without prejudice and seeks leave to amend his complaint.

Our court of appeals has stated:

> Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged

---

[*] DSH and NSH are the same entity. Although the hospital where plaintiff is an inpatient is colloquially referred to as "Napa State Hospital," it is actually "Department of State Hospitals – Napa."

> in the complaint, taken as true, entitle the plaintiff to a legal remedy.

*Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quotations omitted).

### 1. CAPACITY TO SUE.

Defendants first argue that "an institutionalized psychiatric-plaintiff should be required to plead capacity in his complaint" (Br. 4). Not so. Rule 9(a)(1) clearly states that a pleading need not allege a party's capacity to sue unless "required to show that the court has jurisdiction." Brackin did not need to allege his capacity to sue in his complaint.

Although Brackin is a mental health patient, he does not necessarily lack the capacity to sue. Moreover, Brackin did not concede the issue of capacity by offering to file a petition to appoint his father, Frank Brackin, as guardian *ad litem*, if necessary, in his motion for leave to amend. Defendants have not argued that Brackin "lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the case." *Golden Gate Way, LLC v. Stewart*, Case No. C 09-04458 DMR, 2012 WL 4482053, at *2 (N.D. Cal. Sept. 28, 2012) (Magistrate Judge Donna Ryu) (describing the standard for determining incompetency under California law).

Even if Brackin did lack capacity, defendants do not argue that representation by counsel is inadequate to protect Brackin's interests. "[T]he court has broad discretion and need not appoint a guardian *ad litem* if it determines the [incompetent] person is or can be otherwise adequately protected." *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cnty., State of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986). "[T]he court may find that the incompetent person's interests would be adequately protected by the appointment of a lawyer." *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989). Here, Brackin is represented by counsel. Nothing in the record indicates that counsel will not adequately protect Brackin's interests nor is there any evidence of a conflict of interest between Brackin and his counsel.

As to capacity, defendants' motion is **DENIED**. Plaintiff's motion for leave to amend to add Frank Brackin as guardian *ad litem* is **DENIED**. The Court expects counsel to speak up promptly if counsel uncovers any circumstance that draws into question plaintiff's mental capacity to sue.

3

### 2. THE SECTION 1983 CLAIM AGAINST THE INDIVIDUAL DEFENDANTS.

Our individual defendants argue that the Section 1983 claim should be dismissed because they are entitled to qualified immunity. Qualified immunity is an affirmative defense that must be pled by the defendant. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A plaintiff has no obligation to anticipate and to rebut such a defense. *Ibid.* Qualified immunity shields state officials unless: (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). In other words, qualified immunity applies unless the defendants' conduct "violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

At the time in question, there was a clearly established right of involuntarily committed patients to reasonably safe conditions. *Ammons v. Wash. Dep't Soc. & Health Servs.*, 648 F.3d 1020, 1028 (9th Cir. 2010). The "*Youngberg* professional judgment standard" was the standard for determining whether an official's conduct violated this clearly established right:

> [T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.

*Youngberg v. Romeo*, 457 U.S. 305, 323 (1982).

The professional judgment standard is equivalent to conscious indifference. *Estate of Conners by Meredith v. O'Connor*, 846 F.2d 1205, 1208 (9th Cir. 1988). "In the face of known threats to patient safety, state officials may not act (or fail to act) with conscious indifference." *Ammons*, 648 F.3d at 1030 (quoting *Neely v. Feinstein*, 50 F.3d 1502, 1508 (1995)).

In their opening brief, defendants argue: "As of the date of Plaintiff's incident the applicable law which was clearly established for patients at state mental hospitals, was the '*Youngberg* professional judgment standard'" (Br. 11). Alternatively, defendants argue in a footnote that the law was not clearly established in our circuit because our court of appeals misinterpreted *Youngberg* in *Ammons* and *Neely*. In the footnote, defendants argue that *Youngberg* only discussed the professional judgment standard in the context of the right to minimally adequate habilitation. This is incorrect. *Youngberg* addressed involuntarily

4

1  committed patients' Fourteenth Amendment rights to reasonably safe conditions, freedom from
2  bodily restraint, and minimally-adequate habilitation. 457 U.S. at 315–16. *Youngberg* made
3  clear that the proper standard for determining whether a state adequately protected the right of
4  the involuntarily committed to reasonably safe conditions is one of "professional judgment,"
5  reiterating that professional decisions regarding safe conditions, freedom from restraint, and
6  habilitation are all entitled to a presumption of correctness. *Id.* at 321, 324.

7        At oral argument defendants argued that the law was not clearly established at the time
8  of the alleged attack with respect to inpatient-on-inpatient violence. Defendants are wrong.
9  In *Youngberg*, the involuntarily committed patient "was injured by his own violence and by the
10 reactions of other residents to him." *Id.* at 310. The facts clearly indicated inpatient-on-inpatient
11 violence was at the heart of the case. Moreover, *Estate of Conners* concerned a Section 1983
12 action brought by the estate of an inpatient who was lured to a remote area of the hospital by
13 another inpatient who then raped and killed her. With that backdrop of inpatient-on-inpatient
14 violence, our court of appeals there held "*Youngberg* was clearly established law." *Estate of*
15 *Conners*, 846 F.2d 1205 at 1208.

16       In their supplemental brief, defendants rely on *Ammons* and *Neely* in arguing that the
17 law was not clearly established as to inpatient-on-inpatient violence. Although those decisions
18 concerned sexual abuse of inpatients by hospital staff, not inpatient-on-inpatient violence, both
19 relied heavily on *Estate of Conners* in holding that it was clearly established involuntarily
20 committed patients have a constitutional right to safe conditions.

21       Defendants next argue the law was defined at too high a level of generality to be clearly
22 established, noting that our court of appeals has been told by the Supreme Court "not to define
23 clearly established law at a high level of generality." *Hamby v. Hammond*, No. 15-35283, 2016
24 WL 1730532, at *3 (9th Cir. May 2, 2016). In *Hamby*, the court summarized the clearly
25 established inquiry: If no precedent squarely governs the facts, the law is not clearly established.
26 *Ibid.* Here, the right of involuntarily committed patients to reasonably safe conditions was
27 specific and *Estate of Conners* governed the facts. This order is consistent with *Hamby* in
28

5

holding that the law is clearly established as to the right of involuntarily committed inpatients to reasonably safe conditions.

Turning finally to *Estate of Conners*, defendants contend that Brackin must allege specific facts showing a "well known" and "demonstrated" threat to his safety. Nothing in *Estate of Conners* supported this argument. In reviewing the district court's denial of summary judgment, our court of appeals merely found that the assailant's "demonstrated homicidal propensities" were "well known to someone in the hospital, if not to [the] named defendants." *Estate of Conners*, 846 F.2d at 1206–07, 1207 n.2. The court did not base its holding on these statements of fact nor did it address pleading requirements.

At oral argument, defendants advocated what counsel called a "Goldilocks approach." That is, defendants argue the demonstrated/well known approach is a middle position between finding *Youngberg* was clearly established and finding it was not. Defendants ask the Court to require Brackin plead a demonstrated and well known threat, despite the fact that such an approach is unsupported by law. This order declines. To state a claim for relief, Brackin must only allege facts showing the individual defendants' conscious indifference to a known threat to his safety.

Nevertheless, Brackin has not here alleged sufficient facts showing a known threat to his safety. Although the operative complaint alleges the individual defendants knew McGraw was violent, it does not allege any facts supporting this naked assertion. Brackin generally alleges, without further specification, that the individual defendants collectively failed to provide sufficient personnel, supervision, warning, and protection, and failed to abide by internal and external policies. This laundry list of conclusory statements does not allow an inference that the individual defendants knew of a threat to Brackin's safety. Without such knowledge, they could not have acted with conscious indifference. Thus, Brackin failed to plead a violation of a clearly established constitutional right.

Brackin argues that his complaint alleges a violation of a clearly established right by merely pleading that the individual defendants violated his constitutional rights. Not so. This legal conclusion is insufficient under the plausibility standard to state a claim for relief.

6

Brackin is correct that the complaint "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pradus*, 551 U.S. 89, 93 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley*, 355 U.S. 41, 47 (1957))). But, under *Twombly* a complaint must now allege sufficient facts to state a claim for relief that is plausible on its face. 550 U.S. at 570. The plausibility standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Brackin's complaint falls far short of *Twombly*.

In his proposed amended complaint, Brackin alleges that McGraw was violent, dangerous, and a threat to himself and others based on the fact that he was a known felon with multiple prior incidents of violence and aggression. According to the proposed amended complaint, McGraw had polydipsia, became violent upon drinking large amounts of water, and it was known McGraw was drinking a large amount of water before he attacked Brackin. This is sufficient to allege a known threat to Brackin's safety.

The proposed amended complaint further alleges defendants Matteucci, Black, and Cooper were each responsible for setting policies and procedures at NSH and that the policies, lack of policies, or failure to ensure policies were followed allowed McGraw's polydipsia to go unmonitored, allowed him to consume an unsafe amount of water, and allowed him to be left unsupervised with Brackin. As to defendants Collins, Monta, and Capicoy, the proposed amended complaint alleges they failed to monitor Brackin or McGraw, supervise McGraw's water intake, or follow rules and procedures (Proposed First Amd. Compl. ¶¶ 29–33). These failures of policy and supervision are sufficient to allege conscious indifference on the part of the individual defendants.

The individual defendants argue that Brackin has failed to allege a sufficient linkage to them under Rule 8 because he has not alleged that they were present when the incident occurred. Not so. The proposed amended complaint alleges that defendants Collins, Monta, and Capicoy were "on-duty" at the time of the attack. It also alleges that defendants Matteucci, Black, and Cooper were involved in the policies or lack of policies that allowed the attack to occur.

7

At oral argument, Brackin's counsel noted Judge Henderson's recent decision in *Snow*. The facts in *Snow* are virtually identical to the facts at issue here. In *Snow*, the plaintiff was an inpatient at NSH who was attacked by a fellow inpatient while both were unsupervised. Brackin's proposed amended complaint is substantially similar to the first amended complaint in *Snow*. Both bring the same five claims for relief and make many of the same allegations. There, the court held the first amended complaint sufficiently pled the Section 1983 claim. Brackin's proposed first amended complaint sufficiently pleads the Section 1983 claim as well.

Defendants' supplemental brief argues that in *Snow*, Judge Henderson incorrectly adopted "a professional negligence standard which ignores the required showing that an administrator acted with 'conscious indifference' in making a professional judgment" (Supp. Br. 4). To support this argument, defendant quotes an explanation of the professional judgment standard which omits the phrase "conscious indifference":

> The court found it 'clearly established that the Youngberg [sic] professional judgment standard provides that '[a] reasonable hospital administrator would know that he or she must, in the face of known threats to patient safety, . . . take adequate steps in accordance with professional standards to prevent harm from occurring.'" *Ibid.*

But, *Snow*, *Ammons*, and *Neely* all provide:

> [I]n the face of known threats to patient safety, *state officials may not act (or fail to act) with conscious indifference, but must* take adequate steps in accordance with professional standards to prevent harm from occurring.

*Snow*, 2016 WL 3055911, at *3; *Ammons*, 648 F.3d at 1030; *Neely*, 50 F.3d at 1508. The professional judgment standard as articulated by our court of appeals and rearticulated in *Snow* does not ignore the required showing of "conscious indifference."

Defendants note that the deadline to seek leave to amend was February 29, 2016 (Dkt. No. 21). In this case, defendants did not challenge the initial complaint at the outset. Instead they filed their motion for judgment on the pleadings over a month after the deadline to seek leave to amend had passed. So they argue Brackin should not be allowed to amend absent good cause.

8

Generally, under Rule 15, leave to amend "shall be freely given when justice so requires." Under Rule 16, once a pretrial scheduling order establishes a timetable for amending the pleadings, a party seeking to amend must show good cause for failing to amend before the deadline. "This standard 'primarily considers the diligence of the party seeking the amendment.'" *Coleman v. Quaker Oats*, 232 F.3d 1271, 1294 (9th Cir. 2000) (quoting *Johnson v. Mammoth Recreations*, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).

Defendants' tactic of waiting until the deadline to amend had passed to challenge the pleading deprived Brackin of the benefit of Rule 15. Here, there was no undue delay or bad faith. Brackin submitted his motion for leave to amend only two weeks after defendants moved for judgment on the pleadings (having been diligent in discovery to uncover facts). Defendants claim they will be prejudiced by a grant of leave to amend because the discovery cutoff is two months away, the deadline to file a motion for summary judgment is three months away, and the trial is six months away. Defendants contend that granting Brackin leave to amend would create twice as much work for them and impair their summary judgment preparation. Please. Defendants brought this on themselves by being too cute with Rule 12(c). For the reasons stated above amendment is not futile and will be allowed.

As to the Section 1983 claim, defendants' motion for judgment on the pleadings is **GRANTED**. Plaintiff's motion for leave to amend his Section 1983 claim is **GRANTED**.

### 3. THE NEGLIGENCE CLAIM AGAINST THE INDIVIDUAL DEFENDANTS.

The individual defendants argue that the negligence claim against them is barred by Section 43.92 of the California Civil Code. Under Section 43.92, a psychotherapist, as defined by Section 1010 of the California Evidence Code, is not liable for failing to protect others from a patient's violent behavior, unless the patient communicates a serious threat of violence against a reasonably identifiable victim. Defendants claim psychotherapist is broadly defined to include "most any person in the stream of psychiatric therapy" (Reply Br. 9–10). Defendants do not offer any authority to support this proposition.

Defendants Matteucci, Black, and Cooper are also defendants in *Snow*, a remarkably similar action brought by another inpatient at NSH. *Snow*, 2016 WL 3055911, at *1.

9

There, defendants made the same Section 43.92 immunity argument in a motion to dismiss. *Id.* at *5. The court rejected the argument because none of the individual defendants fit within any of Section 1010's sixteen subsections. *Ibid.* So too here. Although Section 1010 is broad, it is also explicit. Defendants Monta and Capicoy could potentially meet the definition of psychotherapist under 1010(k) and 1010(l); however, defendants do not argue that either has a master's degree in psychiatric-mental health or is certified as a clinical nurse specialist. None of the individual defendants have met the definition of psychotherapist at this stage.

The individual defendants' argument that Brackin failed to allege a duty owed by them is unconvincing. Both the complaint and the proposed amended complaint properly allege that Brackin and McGraw were under the care, control, and supervision of NSH employees and that the individual defendants were NSH employees. As in *Snow*, defendants fail to cite any authority suggesting hospital administrators and nurses do not owe a duty of care to patients.

In their supplemental brief, defendants raise an entirely new argument. For the first time, defendants argue that the negligence claim against the individual defendants should be remanded to state court because of California's right to interpret its own laws (Supp. Br. 6). Defendants should have considered this before removing the action to federal court. The negligence claim in the original complaint is nearly identical to the negligence claim in the proposed amended complaint. Defendants cannot unring the bell. Regardless, their Section 43.92 theory of immunity remains unsupported by the law.

As to the negligence claim against the individual defendants, defendants' motion is **DENIED**. Plaintiff's motion for leave to amend his negligence claim against the individual defendants is **GRANTED**.

    **4.    THE STATE LAW CLAIMS AGAINST DSH.**

        **A.    The Failure to Discharge a Mandatory Duty, Failure to Provide Adequate Equipment Or Personnel, and Negligence Claims.**

DSH argues that the state law claims against it for failure to discharge a mandatory duty, failure to provide adequate equipment or personnel, and negligence should be dismissed because it is not liable under California law. Section 854.8(a) of the California Government Code

provides in relevant part that a public entity is not liable for an injury to an inpatient at a mental institution. This section is subject to the exception set forth in Section 855, which provides that a public entity is liable for injury proximately caused by its failure to provide adequate or sufficient equipment, personnel, or facilities as required by any statute or regulation of the State Department of Health Services, Social Services, Developmental Services, or Mental Health Services. The California Court of Appeal has clarified that "Section 855 was intended to impose liability only when the statute or regulation sets forth a specific standard that gives the public medical facility clear notice as to the minimum requirements with which it must comply." *Lockhart v. County of Los Angeles*, 155 Cal. App. 4th 289, 308 (2007). A regulation setting forth a general policy goal is insufficient if it "does not specifically direct the manner in which that goal is to be attained." *Ibid.*

Here, Brackin attempts to plead the Section 855 exception to DSH's immunity under Section 854.8(a) with reference to California Code of Regulations Sections 71001 *et seq.*, 71225, 73319, and 73523. In his complaint, Brackin expressly pled only violations of Sections 71225 and 77061. He now concedes that Section 77061 does not apply. Instead, he argues that Section 73319 was pled through reference to Section 71001 *et seq*. The audacious proposition that "et seq." could encompass a regulation over two thousand sections later, even if entertained, does not remedy the failures of Brackin's pleadings. In his proposed amended complaint, Brackin endeavors to expressly plead Sections 71225, 73319, and 73523; however, even this change does not establish an exception under Section 855. Section 71225 requires a "sufficient" number of personnel for the safety of the patients. Section 73319 provides that each facility must employ a "sufficient" staff to provide a minimum average of 1.1 nursing hour per patient day. Section 73523 states that patients have the right to be free from mental and physical abuse. Two of the three regulations rely on the "sufficient" language *Lockhart* expressly found too broad to fit within the narrow exception of Section 855. None of the regulations specifically direct the manner in which the broad goals they set out are to be attained. Thus, DSH has statutory governmental immunity under Section 854.8(a). The proposed amendment would be futile.

11

Brackin argues that *Baber v. Napa State Hospital*, 209 Cal. App. 3d 213 (1989), not *Lockhart*, applies in this instance. This order disagrees. In *Baber*, the California Court of Appeal held that minimum standards could be established by collateral evidence. *Baber*, 209 Cal. App. at 221. The court expressly disapproved of *Baber* in *Lockhart*. *Lockhart*, 155 Cal. App. 3d at 308. The two times the California Court of Appeal has since considered the conflict between *Baber* and *Lockhart* the court found only that the two were in agreement to the extent the plaintiff has the burden of proving a mandated minimum standard was violated. *See Johnson v. Alameda Cnty. Medical Center*, 205 Cal. App. 4th 521, 530 (2012); *Manzano v. Olive View Hosp.*, No. B263192, 2016 WL 1735015, at *5 (Cal. Ct. App. Apr. 28, 2016). There is no decision supporting Brackin's contention that the *Baber* standard should be applied in place of the more recent *Lockhart* standard.

As to the state law claims for failure to discharge a mandatory duty, failure to provide adequate equipment or personnel, and negligence against DSH, defendants' motion for judgment on the pleadings is **GRANTED**. Plaintiff's motion for leave to amend his claims for failure to discharge a mandatory duty, failure to provide adequate equipment or personnel, and negligence against DSH is **DENIED**.

### B. The Respondeat Superior Claim.

DSH argues that the respondeat superior claim against it cannot survive if the negligence claim against the individual defendants does not survive. The individual defendants do not qualify for immunity under Section 43.92 and Brackin has stated a claim for negligence against the individual defendants. Brackin alleges and defendants admit that all individual defendants were employees of DSH and/or NSH, acting within the course and scope of their employment. As such, Brackin has stated a claim for vicarious liability predicated on the negligence of the individual defendants.

As to the respondeat superior claim against DSH, defendants' motion is **DENIED**. Plaintiff's motion for leave to amend his respondeat superior claim against DSH is **GRANTED**.

**CONCLUSION**

For all the reasons mentioned above, defendants' motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**.

Defendants seek judicial notice of a copy of DSH – Napa's license to operate from the California Department of Public Health, in order to show that Section 77061 of the California Code of Regulations is not applicable to DSH. Defendants also seek judicial notice of a copy of DSH – Napa's Standards Compliance Department statement to identify the level of care administered to the Brackin's unit. These documents were not necessary to this order. Accordingly, defendants' request for judicial notice is **DENIED AS MOOT**.

Plaintiff's motion for leave to amend in **GRANTED IN PART AND DENIED IN PART**. Plaintiff may reformat the proposed amended complaint to include everything except the third and fourth sentence of paragraph one, paragraphs 37–45, and count (vii) and the second sentence of paragraph 49. Plaintiff shall file his amended complaint, as modified above, by **NOON ON JUNE 9**. An answer to the first amended complaint must be filed within **FOURTEEN CALENDAR DAYS** thereafter. No further Rule 12 motions shall be made, since defendants have already effectively addressed Rule 12 issues in opposing plaintiff's motion for leave to amend.

Defendants request the trial date be vacated and all procedural matters be stayed until defendants have answered. There is no good cause for this relief. All deadlines remain in place.

**IT IS SO ORDERED.**

Dated: June 8, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13